Those for the record. Case number 09-2719, Bright Horizons Children's Center v. Riverway Midwest. Good morning, Your Honors. Terrence Sheehan, S-H-E-A-H-A-N, on behalf of Defendant Appellant Riverway Midwest II. Good morning, Your Honors. Gina Park, J-E-A-N-A-H, Park, on behalf of Appley Bright Horizons Children's Center. Now, I don't know to what extent you've had the good fortune or misfortune, as the case may be, to appear in this courtroom before. At any rate, I think you know that by the rules, each side is entitled to 15 minutes of argument from which the appellant may reserve whatever period that party may feel necessary for rebuttal. You may also know that, at least by the grapevine, that we are quite liberal in allowing you to complete your arguments, but not wastefully, only if we feel it's essential to assist us in understanding the various issues of your case and to provide you with the necessary time to feel that you've had your day in court on your oral argument. But keep in mind that we do read the briefs rather carefully. That's not to discourage you from stating the facts. We can always use whatever refresher your facts give us, but don't assume that you're starting us from scratch. With that, would the appellant step up, if you're ready, and proceed? May it please the Court, Counsel. My name is Terran Sheehan, and I represent the Defendant Appellant, Riverway Midwest II, LLC, which I will refer to throughout the argument as Riverway. I am before you today seeking reversal of a trial court's order, entering summary judgment in favor of Plaintiff Bright Horizon, on both Plaintiff's complaint and on Riverway's counterclaim. There are three issues that we've presented for review today. One, whether the Circuit Court erred when it held that, under the lease agreement, defendant was required to relocate plaintiff to a ground floor space. Well, let's explore that for a moment. There are two aspects to the landlord's obligations under the agreement. One, I suppose, is not to breach the lease by violating a specific term of the lease, as defined in the landlord default provisions of the lease. The other is, when dealing with relocation, to provide a mutually satisfactory alternative to the opposing party. Are you claiming, and there is a provision that's 14 of the lease, under 14 of the lease, there is a further provision that in the event mutual satisfaction is not achieved, then a payment of $125,000 will be given to the defendant to relocate. Are you admitting the obligation to make the $125,000 relocation payment, or are you disputing that, and is that part of your counterclaim? The short answer, Your Honor, is we are not disputing the $125,000 payment, because we believe that is an obligation of the lease. If I may break your question. What do you determine to be the standard for mutual satisfaction? Is there one, or is it wholly arbitrary? It is not wholly arbitrary, Your Honor, and you're referring to Article 14. And Article 14 in the lease specifically states what would happen if Riverway provided notice that they wanted to relocate. Nowhere in Article 14. What's the implicit standard for mutual satisfaction? Is it totally subjective, arbitrary, or is there a built-in good faith, reasonable, or whatever other possible implied standard controls that provision? Well, Your Honor, I believe in Illinois contract law there is an implied duty of good faith. You mean that's the implied duty of good faith and fair dealing? Is that what you're invoking for this provision? I'm not invoking that, Your Honor. Then you're conceding. I'm conceding that there is one, and I think that these terms were, you know, the trial court found these to be two sophisticated parties. This was a heavily negotiated lease. It's 22 pages. Both parties had an opportunity to put whatever provisions they wanted. Before we get there, let's get some of the technical spade work. Okay. Doug first. The technical spade work. Well, let me do my thing. Sure, Your Honor. You know, we did read your briefs, and I think you're obviously a sophisticated attorney, and you know that you're basically here on oral argument to answer questions. Correct, Your Honor. You know, because otherwise your briefs were all superb and quite comprehensive. Now, the question is this. Do you have any obligation with regard to your alternative space other than the location and area? What obligation do you have besides that? We have to provide space. Space is not fully defined. Okay. In the vicinity. That's the location.  And square footage, I imagine. Correct, Your Honor. Okay. Beyond that, do you have any further obligation? Actually, there is no further obligation. Is there an obligation to be greened from the provision of space that will engender mutual satisfaction? I don't. Well, the United Covenant of Good Faith concedes that, though, doesn't it, that you would, under the language of 14, be obligated to provide alternative space that should give, that should be mutually satisfactory, which is why I ask you how you measure satisfaction. Is that also a function of good faith? Is that also, or is that a function of reasonableness? Or is it, again, simply up to you to guess the whim of the lessee in becoming satisfied? Well, Your Honor, it's a mutual satisfaction. So I think the idea of guessing would be on both sides. I think it would be reasonable. There are terms reasonable. Well, you're not responsible. Nobody is contending, is making an issue out of your standard for being dissatisfied because you're obviously satisfied. You're tendering it. What is the standard of the tenant in accepting that property? Well, Your Honor, I can tell you that textually there isn't a standard. I believe that implicit in those terms is that you have to be reasonable, that you have to give them a space that can be built out. And, in fact, Your Honor, the trial court, I think, touched on this issue. The trial court said, well, you can just send them to a garage and you can say that's a space. And that's not true because we have, we, the landlord, have obligations. We have to build out the space, give them the same square footage and build it to a, at least as good as what they have. So there's a reasonable standard. So you have to tender a property that would reasonably, that would be reasonably satisfactory to the tenant. And I'm not going to get into does it have to be subjectively or objectively. That's something we may have to play with. We may not, depending on where we get in this argument. Okay. Now, if you tender property that is not reasonably designed by whatever standard to be satisfactory to the tenant, are you then in breach of the lease? We could be, Your Honor. I would say we could be. And subject to its default provision and fee shifting. I disagree with that, Your Honor, because the default provision, may I explain why? Because you know. You said you'd be in breach of the lease and I'm trying to connect. We may be. And again, it depends on. Well, if you are. Factually. If we are, we wouldn't. We could be, Your Honor. And it would only be. See, the attorney's fees provision is, you know, there's strict definitions as to what is a default under the lease for the landlord. And then if there's a default. I'm giving you a hypothetical. Okay. And the reason I give it as a hypothetical is because if it's my hypothetical, you cannot play with the facts. Okay, Your Honor. You know, the object of my hypothetical presents them to be. Okay. Okay. If you offer, if you tender property that under any measure of reasonableness, be it subjective or objective, is not reasonably satisfactory, then are you in breach of the lease subject to the default provisions of the lease? We could be if the tenant did certain things under the default provision, which they did not do here. The only way in which the landlord can be held. Now, this is just the attorney's fees provision. They would have to be able to establish, I imagine, the DCF prohibition and establish that they made a good faith effort to negotiate and failed to do so. If that's an issue of fact, you say that would permeate to the question of whether you have, whether they have sufficiently established their, the unreasonableness of your tender to warrant summary adjudication. Correct. Okay. Now, if they can show an admission on your part that you concede that the DCFS regulation applies, and I'm not too sure that we can take judicial notice of what that may be, and if you concede or if you are precluded from challenging the assertion that they made a good faith effort to negotiate and failed, then you would be in default under the lease. Well, see. If, if, if. That's correct, Your Honor. Subjunctive. We would be defaulting the lease. However, attorney's fees would not be available because you have to look at the attorney's fees provision. And under the attorney's fees provision, the tenant would have to send notice of the default to give us an opportunity to cure. If we're able to cure within 30 days, then there is no fee shifting. And you say there's an issue as to whether you are given your cure provision? Absolutely. They can't point to anything. Even though there were three different attempts to satisfy their expressed dissatisfaction, and I'm not saying whether it was reasonable or unreasonable, you know, I'm not trying to preempt any of the issues in this case. I just want to understand it from a technician's perspective. From a technical perspective, Your Honor, you can, the landlord could be in default, but the attorney's fees provisions could, may not apply, because in order to get attorney's fees provisions, you have to send notice. I am, I am not saying. Didn't they send you notice where you proffered an alternative location on the ground floor, which you then retracted? Yes, Your Honor, but that was pursuant to the relocation provision in those negotiations. You can send notice, and then they have 180 days for us to actually get them out of the space. We were negotiating. There wasn't at any point that they said. Couldn't you have done that any time up to judgment? Is the filing of a lawsuit notice? No, Your Honor, not under the lease. But even the reaction doesn't satisfy the notice provisions? I do not believe that, Your Honor. Not under the lease. And the lease is pretty specific. And remember, Your Honor, we're dealing with the America rule. There's only two ways you can get attorney's fees, either through statute or through agreement. Consensus. Yes. Consensus. And the consensus is there's certain ways in which you can get them. You can't get them in every, every aspect. Here they didn't do that. But back to the question of whether. Is that what your case is going to hang on? No, Your Honor, that's only the attorney's fees. And quite frankly. Well, only the attorney's fees are an issue. Since you have conceded that the $125,000 would be something that you'd be obligated to tender anyway. Your Honor, if you reversed the trial court's judgment and said that Riverway did not breach it. And they comply with the relocation provision. Then our client would still, under that relocation provision, be obligated to pay $125,000. Okay, so what's an issue damage wise? What I'm saying is the fee. Yes. Well, actually, that's a different issue if we would be entitled to fees. But what I'm saying here is the court not only found summary judgment. It also said, Riverway, you defaulted. And therefore, there's a default provision. And I'm giving the attorney's fees. And we said, even if you found summary judgment against us. You still shouldn't have filed the attorney's fees because they didn't comply with this. And again, you have to look at the intent of the parties. And in writing, there's an integration clause. And everything is written here what was agreed to. Nowhere in the contract does it say that there has to be space on the ground floor. What the trial court has done is the trial court has defined this implied term. Counsel, if I may, I'd like to keep the issues separate. Okay. And we haven't bottom-lined any of those. I mean, all of my questions were if questions. Sure, correct. There are obviously questions to be asked to your opponent. Mirror-like questions, right? Correct. Would you like me to further expound on an answer? Well, obviously, if you haven't breached the lease, you're not obligated to any payment of fees. If you have breached the lease, your contention is you're still not obligated to payment of fees unless they have complied with the conditions preceding and subsequent pertaining only to the fee-shifting provisions, if nothing else. Correct, Your Honor. Is there anything else that you want to add to that? Altogether or just in that effort? Whatever. No, no. I might just give you a couple of minutes just to state whatever you think. Yeah, sure. No, no, Your Honor. You clearly understand the issues. Before you get to that, DCFS, do they not require a daycare center to be on the first floor? They have exceptions, though, Your Honor. There are exceptions to that. They say the daycare center that has infants and toddlers must be on the first floor, but there can be an exception. The exception is that you can notify the fire marshal and ask for an exception. The plaintiff notified the fire marshal, but the plaintiff didn't. There's nothing in the record to show that it exhausts administrative remedies. How exhaustive must they be before they could invoke the unreasonableness of your tender? Well, first of all, we think it's a question of fact, Your Honor. We've argued that they haven't done that. And second of all, they could have filed a writ of mandamus. They could have done other things to try to comply with that. But what's important here is it's not. Is that right? You think so? I think so, Your Honor. Is that in the definition of reasonableness, that it's not unreasonable unless they have actually take exhausted all of their legal remedies? It's not in the definition. However, the fact that the relocation provision kicks in, there's a lot of things they could have done. A, they could have just taken the $125,000. B, they could have taken the space that we looked at. And in the permitted use section, if they wanted to use it for something else, they could have. They could have used it for corporate offices or training facilities. Not without your permission. Without permission. Correct, Your Honor. But we're offering this space. And again, that we cannot unreasonably withhold. And that's specifically in there, Your Honor. So if they came in and said, well, look, we're looking at this. There's this ground floor provision that we never discussed with you. They're invoking Brayside. Yes, Your Honor. Brayside is absolutely. That's the only analogous case here. In effect, there's two analogous cases. A case that was cited in Brayside. The plaintiff is. The Thread and Thistle case. Pardon me? Thread and Thistle. The Pioneer Trust Savings Bank versus Zonta. It's the exact same case as Brayside in that the tenant had legal obligations which it did not tell the landlord. You may want to wait with that for your rebuttal. And I may, Your Honor. I've been. I know that this court often likes to show analogous cases. But what I can tell you is they have not cited one case. One analogous case. That stands for their proposition that even though ground floor is nowhere in the lease, even though the relocation provision. Well, first of all, Brayside did not have a mutual satisfaction provision, did it? That's correct, Your Honor. So we're dealing with a whole new dimension using that standard as imposed peculiarly under this lease rather than Brayside or Pioneer. That's true, Your Honor. But when we say mutually satisfactory, at any point, you know, there's $125,000 is two and a half times the yearly amount of the lease.  They could simply say we want to take the money. We're not satisfied. When we say reasonableness, I mean, it's really an issue of you have a choice. All right. I think we're kind of getting boggled down in secondary kinds of arguments that are probably resolvable factually. At least to the extent of passing the standards for summary adjudication. If it was contained in an affidavit, if it was contained in verified answers to interrogatories and without being opposed, if it was conceded through a judicially estoppable manner in your responses to the memorandum in support of summary judgment, those issues disappear. Well, there is one issue. I don't think you want to hang your case on those. If you do, fine. No, no, no. Your Honor, we think it's unambiguous. We're hanging our case on, but there should be no ambiguity in the contract. However, if there is an ambiguity, then it should be sent back in the court. Then the only, all of these issues before you are de novo. The only issue that would be abuse of discretion would be when the circuit court denied our motion to compel employees to testify about the circumstances surrounding the case. The court ultimately said it's an unambiguous term, so it doesn't really matter at this point. And we agree with her on that, but we disagree on the interpretation. But if there is an ambiguity, then we should have the right to use these. Well, tell me something. Ambiguities in a contract which are resolvable, I suppose, extrinsically, and there are really, there's the conservative and progressive view as to whether the ambiguity can be created extrinsically or whether the ambiguity has to exist within the four corners. But either way, the judge resolves that, but would at times require the taking of evidence, unless the evidence already presented through discovery would satisfy that provision. Where is the ambiguity here? Your Honor, again, we don't think there's an ambiguity, but we think that the only way that you can interpret the contract the way in which the trial court did, you would have to look to extrinsic evidence regarding the intent of the party. Explain that specifically. Specifically, Your Honor, the trial court has said that I'm going to imply this term,  under each of the provisions that she implied this, it says tenants shall and tenants weren't. I don't see the spin that you're giving to really necessarily be applicable. Are you denying that the, at least the contract from your end, waivable, of course, by law and order, require compliance with DCFS explicitly? Require tenants' compliance. Yeah, tenants' compliance with DCFS regulations. Yes. Okay. Are you denying, at this point, the existence of that regulation requiring ground floor occupancy by these daycare facilities that cater to toddlers? No, but there are exceptions, Your Honor. Are you denying that this facility catered business with infants and toddlers? No, Your Honor. Okay. Are you denying, then, that they were to function as the business that they were, that the lease contemplated invoked compliance for infants and toddlers with existing regulations, whatever they may be? If they're going to use the space for the use that they warranted, if they are going to use the space for a different reason, if we go to a relocation provision. Like, for example, to store catering trucks, do an exchange with Grayside. In Grayside.  It's not the same situation, Your Honor. The tenant is warning this. Counsel? Is it? Is it in any way analogous? It's, well, you know, of course there's some distinguishing features, Your Honor, but I believe the legal principle is the same. The legal principle is that when the tenant warrants that it will do something, they are the one who are making the laws. So what constitutes, then, let's go back. I thought we kind of plowed that. Yes. What constitutes a satisfactory tender of alternative space? If, in fact, the space is not suitable for toddlers, but is perhaps suitable to store the shuttle when it's retired. That, according to your reasoning, would satisfy that requirement. Your Honor, I think that what would be satisfactory is what is outlined under Article 14, which is what they agreed to. Space that the landlord gives that is, you know, the same, that it's the same square footage. There's nothing in there about a ground floor. I don't think you want to go there, Counsel. I don't think you want to state that under the lease that your tender is not bound to satisfy the primary business of the occupant for which is fully articulated in the lease. Just like in Brayside, Your Honor. I think you have better stuff to argue. Well, you're asking my time is up. Before you finish your time, do you think it's reasonable to house infants and toddlers on the second floor? It can be, Your Honor, because there's clearly an exception. Do you have any infants or toddlers? I have several, Your Honor. I have four children. Would you like them to be on the second floor? Well, Your Honor, it all depends on what the space is, and the fire marshal makes that determination. The fire marshal has to make that determination? Well, under the administrative rules, the fire marshal makes the determination. Well, I understand that, but not the reasonable. You see, the problem of life, the way I see it, is that when people have to argue what is reasonable, we're in trouble. People should know what is reasonable. I'll just leave it at that. Thank you. You'll have a couple of minutes for rebuttal. Thank you. Good morning, Your Honors. Gina Park, on behalf of the plaintiff at the Lee Bright Horizons. I will try to refer to the landlord as Riverway, but I'll likely refer to the defendant as landlord and Bright Horizons as the plaintiff. Just to cut to the heart of the matter here, Your Honor, counsel has admitted and the court has identified the fact that Bright Horizons is a daycare center, that it cares for infants and toddlers, and that as such, the DCFS licensing regulations apply to Bright Horizons. How is that established for the record? That's set forth in the actual terms of the lease itself, which- The lease simply has a provision obligating the tenant to be in compliance with DCFS regulations, whatever they may be, but it doesn't identify any specific regulation. That's correct, Your Honor. It does, however, refer to the daycare industry licensing standards that are promulgated by the DCFS. Also, those are obligations imposed on you by the landlord. You don't deny that the landlord can waive those obligations. That it can or cannot? It can. C.A.M. From his part, the state may not waive it, but as far as the lease is concerned, you wouldn't be in breach of the lease if the landlord decided to waive your obligations to be lawful. If you wanted to have a bookie joint, it's obviously not going to be enforceable here for public policy reasons, but as far as the landlord is concerned, he can waive whatever requirements the law may impose on you as being his requirements. I believe the sole permitted use of this lease is a daycare, a child care center for children. To that extent, it would render the entire lease meaningless if the landlord were to say that it could waive a DCFS regulation applied to Bright Horizons on behalf of the state. That would result in Bright Horizons being in violation of the DCFS regulations and in violation of the terms of the lease. Now, how does that play to your benefit under the terms of the lease? Let's assume that it undercuts your ability to run your business. Where are they obligated to provide for you to be able to run your business? They would be obligated, if the court is referring to Article 14, the relocation provision, without even needing to get to whether or not there has to be a reasonable, mutually satisfactory term, the landlord would be obligated to provide substitute space for the leased premises, and that is a term directly from the provision itself. Supposing, hypothetically, at the time this lease or entered into, toddlers were, daycare was permitted for toddlers above ground floor level, and subsequently, after the enactment of, after the execution of the lease, a new regulation was imposed. Would the landlord be obligated to satisfy that? Yes, Your Honor, and the court has identified exactly why it would be commercially unreasonable to, as the landlord has suggested, specifically incorporate the ground floor requirement, as well as all the rest of the DCFS regulations, of which there are regulations which govern everything from the type of fence which needs to be used in the outdoor play area to whether or not toddlers Supposing, hypothetically, you didn't need more than, let's say, a wooden fence to contain the play area at the time the lease was executed, but then DCFS would change that standard to something horribly expensive. Would the landlord be obligated to supply that new provision to let you continue with this business, even though it was not something contemplated at the time of the lease? Is it your position that the landlord undertook to satisfy the DCFS regulations, whatever they may evolve into, as of the time they tender alternate space? Yes, Your Honor. The permitted use of this lease was as a daycare space. And they would be in breach of the lease if they failed to do so, as opposed to simply being obligated to carry out the relocation provisions with the $125,000 tendered towards your cost of relocation? Correct, Your Honor. That's exactly why there is a provision in the relocation provision which says that if the alternative space is substitute space, meaning that it can stand in the place and in the function of the daycare center, that the landlord would be obligated, it shall pay for all renovation costs and relocation costs. And that actually identifies... Yeah, but there are two factors here that we're dealing with. One is the relocation cost, which doesn't require the landlord to be in default. It simply requires the landlord to satisfy what may be an arbitrary rejection on your part. I don't think that rejection would be arbitrary because, again, focusing on the word substitute, not mutually satisfactory, but substitute, the definition of substitute is, I thought it would be useful to look up for purposes of this discussion, a person or thing that takes the place or function of another. And a space that is non-usable, meaning it's on the second floor or otherwise in breach of a DCFS regulation, cannot substitute as a daycare center. It simply can't. And that is just reading the plain language of the law. Let's backtrack for a minute. What is your position as far as your right to reject the tender? Can you reject it whimsically, or does the implied covenant of good faith, is it something you recognize vis-a-vis the requirement of mutual acceptance? There is a good faith requirement on both sides. There is no whimsical or arbitrary right to reject. The assumption has to be, however, that the alternative space can substitute, meaning that it complies, you know, subject to being renovated and building out, that it complies with all DCFS regulations. There's no way under any circumstance that a second floor or a third floor or fourth floor space could substitute. Is it your understanding of the lease that you would not be permitted to substitute any tender that in its total impact is sufficient for your operation of your business? In other words, could you say, well, I wanted my daycare center to be in the northern part of Lincolnwood, and this is in the southern part of Lincolnwood. The premises are the same. The DCFS will not be in any way rejecting of this space. It can function just as well, but I want this different location. And if that's – your Honor has identified a situation that's unlike here, where Bright Horizons on its own has decided that this isn't mutually satisfactory, and that's why the $125,000 provision is in there. For example, as your Honor suggested, if the space was too close to a perceived competitor of Bright Horizons and Bright Horizons decided not to be there, then it would simply accept the $125,000. All right. Then in that event, the landlord would not be in breach of the lease. I would say in that situation, no. And there would be no fee shifting. So we see a dual role of this mutual satisfaction standard under the lease, one that invokes a violation of the lease and one that may simply be a disengagement provision by mutual consent under the pre-existing agreement. That's correct. And that's why this is a relocation provision and not an early termination provision. So the question here is, under which category does this – do these facts fit? Do they fit within the category so that they constitute a breach of the lease by the landlord for having made that tender? Or are they simply operational facts that permit mutual disengagement with a payment for – with a relocation, partial indemnification? Is your Honor talking about the – Somebody called it, and one of the circuit court briefs referred to it as liquidated damages. But that doesn't surface here, so we won't deal with that. That was our brief below. But is your Honor referring to the hypothetical or the facts in this case? Well, the facts in this case. You now concede that the requirement under 14, that the tender be of the same size and location and that it provide – that it be mutually satisfactory. The failure to tender something that's mutually satisfactory does not automatically constitute a breach of the lease. I would go so far to say that I can see that. But what I would say is that an alternative space that is not on the ground floor or in some other way violates DCFS regulations cannot be substitute space. It doesn't fall under this provision. And by extension, it cannot be mutually satisfactory. Well, how do you determine when something is not mutually satisfactory? Well, let's say it might not be mutually satisfactory to locate in another portion where you're too close to competition. Yet you're not asserting that that would necessarily invoke the fee-shifting requirement. If the space otherwise complies with DCFS regulations. So how do you determine when it fits under one category or when it fits under the other? Well, I think this really – this inquiry doesn't require the court or the trial court to check its common sense at the door. I mean, here – Well, why would we have to read into this agreement that a failure to tender a property that permits the business to be carried on should be characterized as a breach of the lease as opposed to simply being a provision permitting relocation? Well, again, if – It would be a lease that has – that provides for breaches for defaults unless it's spelled out in the default provision. The lease itself provides for that because if the landlord tendered a relocation notice to space on the second floor, were Bright Horizons to accept that space, it would automatically be in breach of not only applicable laws – That's your breach. Why is that the landlord's breach of his lease as opposed to simply invoking the termination indemnity that 14 provides for without going to fee shifting? You know, it's one thing if he doesn't give you heat or light or whatever he's obligated specifically to do under the lease. But here, he's obligated to give you something which he concedes has to be reasonably satisfactory to both sides. But the way you're reading that provision, it's not automatically a default. Under that hypothetical, it's not automatically a default. Well, when is it? This is a clear breach of the lease because the landlord is obligated, it shall, should it invoke the relocation provision to offer substitute space for the leased premises. And I just keep going back to that because the court doesn't need to look beyond just the plain language of the lease itself. And it's the landlord's interpretation of the lease that would really read into this, a provision that doesn't exist. And by that, I mean an early termination provision which would allow the landlord, under its interpretation, a unilateral right to choose alternative space. The example that we use at the trial court is located on the top of it. Maybe it's the equivalent, maybe this relocation provision is the equivalent of a contract of a lease that's terminable at will with a payment of some sort of indemnity. Absolutely not because this lease had a 10-year term. And to accept the landlord's interpretation of the lease would render that term entirely meaningless. And the court and the trial court needs to interpret this contract in a way that doesn't render other terms meaningless or render absurd results. And, again, using that hypothetical, if the landlord were to offer space, example being the top of it. Well, then, in effect, you know, we're bringing back the characterization of $125,000 as liquidated damages. That's true. That is true. And that's, again, what the – What about the appellant's argument here that you had a duty to apply for an exception from the fire department or the fire marshal? With regard to that, first of all, the record is clear that Bright Horizons did attempt to obtain an exception. There are two provisions in 407.370 that allow for exceptions. One is through the state fire marshal, I believe the Chicago Fire Department as well, but obviously that doesn't apply in this case, or from the DCFS itself. And in both cases, Bright Horizons attempted to receive an exception from the fire marshal and was denied the exception. Bright Horizons then tried to obtain an exception from the DCFS itself and was also denied. So, really, Bright Horizons did everything that it could possibly do to obtain an exception, to act in good faith, and to comply with the landlord's unreasonable requirement. Was that denial part of the affidavits and things on December? It was, Your Honor. The affidavit of Don Ellis Verzaca, who was the employee at Bright Horizons who contacted both agencies, testified to that. And as far as counsel's argument about there being an administrative remedy, there's nothing in the administrative code that allows for an administrative remedy. And as the Court, I believe, suggested, there has to be some limit to what Bright Horizons is required to do in light of the landlord's unreasonable position. What is that limit? What's that bright line? Good faith requirement to obtain an exception. And that hasn't been, that hasn't been, the landlord hasn't taken issue with that, or to say that that was somehow, that was not presented below to the tribe. Where is, where is the, are the facts concerning the efforts to negotiate with the fire department? By what, by which discovery or other sources is that fact established? That's set forth in an affidavit that was submitted in support of Bright Horizons' motion for summary judgment and email communications that the employee engaged in. It was not countermanded by a counter affidavit. Correct. That's correct. Now, why shouldn't the landlord be permitted to take some further discovery to ascertain the reliability of that affidavit? The landlord didn't actually notice the deposition of the affiant in that case. The only depositions that the landlord sought to take were of three individuals, none of whom were the affiant. The landlord didn't try to take testimony on that issue and didn't have any issues with it. So that issue was never presented to the trial court. Where else besides that affidavit? The interrogatories don't speak to that, the answers to interrogatories. That's correct. They don't speak to discussions, relocation discussions by the parties before the contract was entered into. They simply deny knowledge. I believe that the answers that Bright Horizons submitted to the landlord's interrogatory state that they don't recall there being a discussion about a ground floor requirement. Now, is that significant? Would the fact that discussions before the lease was entered into, that discussions took place or that discussions did not take place, be significant under your theory of the case? No. The reason being this lease is unambiguous as a matter of law. And the air safety case teaches us that where there's an integration clause, as the landlord pointed out in the brief, in its brief, that there is in this contract, that the court is to presume that the party's intent is set forth in the contract itself and no extrinsic evidence is necessary to determine the party's intent. That being said. That presumes no ambiguity. That presumes that there's no need for extrinsic evidence. Well, if it was ambiguous. That's correct. Then extrinsic evidence would come in, regardless of the fact that the lease or the contract provisions of the lease profess to be integrated. And we submit that the contract is unambiguous. And I believe the landlord's position is that it is unambiguous as well. That being said, even if there were ambiguity in this case, the record demonstrates that the parties, the result would have been the same if the depositions were allowed. Well, in your brief, you characterized their position that it is, that they do consider it ambiguous because you state, just because there's a difference between the parties as to how to spend the provision, doesn't necessarily make it ambiguous. That's true. We were just responding to their alternative argument that, first, they took the position that the lease was unambiguous, but that if it were ambiguous, that the court abused its discretion by not allowing discovery. And just on the standard of review, the court has wide and considerable discretion to allow or deny discovery. And the landlord's brief also ignores, as I think we pointed out in our reply, that the trial court actually did allow discovery on intent of the parties. And so to say that the court erred or abused its discretion by not allowing any discovery is somewhat of a misleading statement. But, again, I don't believe that any, first of all, the trial court, there's no abuse of discretion here as far as the discovery issues go. But even if the trial court had allowed discovery, the result would have been the same. Only if you take the position that the historical disclosure of the discussions that either did or did not take place are irrelevant regarding the relocation provision. There's evidence in the record as well in response to the discovery request that the landlord or the termination relocation provision was never really an issue. And that was said. Yeah, that's, what is it, past case or what? Process, yes. Right. But supposing there was discussion and the discussion was that on relocation we are not going to concern ourselves with the ground floor requirement. I think this is a little bit of a sidetrack discussion only because the parties did incorporate a ground floor requirement. The landlord is a sophisticated commercial, or landlord. It can't say that it was ignorant to the fact that these DCFS regulations applied in this lease. I mean, the sole permitted use of this lease was a daycare center for children. It was a 10-year lease. Well, there's, it's not simply an easy, a simple crossover from a requirement that the landlord places on the tenant to establish that the tenant necessarily, that the landlord necessarily considers the ability to function in your business as hanging on that compliance as far as state agencies are concerned. Well, I think there's something in the lease that might actually suggest otherwise. The article 5.1 of, 5.01 of the lease, which is the occupancy provision that we've been focusing on, also states that the tenant was, it specifically and expressly acknowledges the tenant was paying low rent to the landlord and that in consideration for, as an incentive provided by the landlord in consideration for this low rent was that the landlord was going to use the tenant as an anchor tenant to attract new tenants. In fact, the landlord stated expressly, or the lease states expressly, that the daycare center, that the tenant was going to be used as part of its marketing to get, to attract other tenants into the space. So, and as a condition of that, the landlord required the, required Bright Horizons to operate as a high-quality child care center defined as a child care center that's licensed by the DCFS. A requirement waivable unilaterally by the landlord. It's, it's really an absurd position because the landlord expressly states here that the child care center would be used as part of the landlord's own marketing plan. But the landlord can waive a provision of the lease any time it chooses. At the time, if the landlord tenders you facilities that no longer permit those standards to be maintained, you think the landlord can then, after you accept it, come in and say you've now defaulted on the lease? The landlord might be able to waive the permitted use of the lease, but not unless the tenant requests it. And there's nothing in the record that suggests that. No, the landlord, to the extent that it's a provision imposed by the landlord, the landlord can withdraw that requirement. That doesn't mean that it changes the obligations which you may owe the state, but you no longer owe those obligations under the lease. But that would still make the tenant in violation of the applicable laws, and that's not commercially reasonable. It's not, it's not reasonable. Anything else? The only other issues that I wanted to raise, I think we touched on the discovery issues a little bit, and I don't know if I'm out of time at this point. You can take another minute. Okay. In addition to the fact that the landlord expressly acknowledged that it was, that the tenant was paying low rent in this case, I think the timing also indicates that the landlord acted in somewhat bad faith here, because this was a 10-year lease, and within less than a year after the lease was executed, the landlord began trying to relocate the tenant. Well, you can't give summary judgment on that issue, can you? I mean, that sounds to me like it cries out for a jury, doesn't it? Well, I only raised that point to bring up the last issue on appeal, which is the attorney's fees. We haven't discussed that yet, but the attorney fee provision here is very clear and states that if, in assuming that this court affirms what the trial court did, the landlord has been in default of the terms, obligations, conditions, and covenants of the lease, and that is the obligation to relocate the tenant to substitute space, which could be usable as a daycare center. In this case, the landlord did not do that and was in breach of the lease. What about the fact that you did not give the landlord sufficient opportunity to cure under the landlord default provision? My first response to that is that that argument was not raised to the trial court. That was not raised in any of the briefings. Yeah, but we can waive it. That's true. That's true. So that's the second. So what do you have for us if we are in a forgiving mood? The second response to that is that there is a notice provision, and I think as the court asked or requested of my opponent, this lawsuit, a declaratory judgment action, should suffice as written notice, in addition to the fact that counsel for the tenant sent a letter in response to the landlord's letter stating that it was rejecting the notice and that this could be added. Is that clear as far as you're concerned, that once you file suit, that the defaulting party can still cure? I haven't done an exhaustive case law research of this issue, but the only provision in 13.03 states that written notice is required. There's nothing specific about how the notice is sent. And I've seen contracts, and I'm sure the court has as well, that when a written notice provision is very, sometimes they're very, very specific about timing and the type of transmission. There's nothing in here about that. So it's certainly reasonable, and it makes sense that filing of a lawsuit, in addition to counsel's letter to counsel for the landlord should suffice as written notice. Anything else? That's it, Your Honor. Thank you. We ask that the court affirm the trial court's orders in their entirety. Thank you for your time. I think two minutes will be enough. Yes, Your Honor. Two minutes is sufficient. Your Honor, it's uncontroverted that ground floor is nowhere in the lease. And what the Riverway did here is it invoked the relocation provision, and therefore the court should look at that provision to determine what they did. They offered substitute space. And what the trial court has done is read that to mean that the landlord has agreed to all of the promises that the tenant has made here. What we're concerned with is not only the effect it has on this case, but the effect it has on commercial leases in general. Let me ask you this. Let's assume that you were quite aware, and I don't see how you can duck that, that DCFS imposed regulations that had to be complied with. Supposing you didn't know at the time you entered into the agreement that there was a ground floor regulation. You didn't know it. That's in the record. Yeah, which may very well be the case, at least as far as we're concerned. But that the regulation nevertheless exists. If you then provide space, a few tender space, that the tenant cannot, that violates that regulation, albeit it was not specifically known to you, do you deny or can you challenge that the tenant is commercially reasonable in rejecting that tender? You can't. No, we couldn't, Your Honor. Okay. The question is, does that put you in default if you didn't know it, or does it simply invoke the second characterization of that mutual satisfaction requirement, namely that it's a termination provision, not a default provision. That's exactly what it would be, Your Honor. Okay. Supposing, however, you learn of that regulation after the contract is entered into, but before you make the tender. What then? The contract speaks for itself, Your Honor. I don't think that we would change it, unless we agree to change it in writing. They never put this ground floor provision in. I know, but supposing you learned about it, albeit after you entered into the agreement. That is a claim being made on this case. But, Your Honor, we'd say we didn't get the benefit of the bargain, because what that means, then, we would have to send them to a first floor location in one of our buildings, which may be commercially unreasonable for us, because that may be primed space. It's nothing we bargained for. If it's something that they never raised, which is clear. In other words, you say that unless it was known to you at the time the tender it, it's a big headline in the sky, you know, like Woody Allen's mother in one of the movies, where she appears in the sky, and you know for sure that there is a prohibition against locating toddlers anywhere but the ground floor, that that's still not a violation on your part. It would not be, Your Honor. And I direct you to Pioneer Trust versus Savings Bank versus Zonta, which is 393 Northeast 2nd 548. And I mentioned this before, and you said, well, is it really factually analogous? It's factually analogous to that set of circumstances. This was a catering business that wanted to get space for 400 patrons. They entered into the space.  people within that space. No mutual satisfaction. Provision. That's true, Your Honor. But the legal, again, the legal principle is the same, that you, you know, you enter into an agreement and you have a writing based on the information you know at the time. If they, if it was important for them to have ground floor in there, they certainly should have put it in there. They didn't put it in there, and we had the benefit of a bargain that we can move them to substitute space. Since they didn't put that in there, they cannot now come back and say that was part of the contract. Your Honor, thank you very much, and we ask that you actually reverse the trial court's decision. This case will be taken under advisement. It was well-argued and well-briefed by both sides. It gives us some interesting issues to think about.